IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kingdawud Burgess, ) | Case No. 8:13-cv-1178-GRA-JDA |
|           Petitioner, ) | |
|           v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Warden Atkinson, ) | |
|           Respondent. ) | |
| _____) | |

This matter is before the Court on Respondent's motion to dismiss or, alternatively, for summary judgment. [Doc. 18.] Petitioner, proceeding pro se, is a federal prisoner seeking relief under 28 U.S.C. § 2241. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on April 25, 2013.[1] [Doc. 1.] On July 3, 2013, Respondent filed a motion to dismiss, or alternatively, for summary judgment. [Doc. 18.] Also on July 3, 2013, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 20.] Petitioner filed a response in opposition to Respondent's motion on July 10, 2013. [Doc. 22.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on April 25, 2013. [Doc. 1-2 (envelope stamped by correctional institution on April 25, 2013).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is incarcerated at the Federal Correctional Institution located in Edgefield, South Carolina ("FCI Edgefield"). [Doc. 1 at 2.] At the time of the incident relevant to the Petition, Petitioner was incarcerated at the Federal Medical Center Devens in Ayers, Massachusetts. [Doc. 22-7 at 1]. Petitioner alleges he was charged with manufacturing and possessing a dangerous weapon after he was caught on camera during an altercation in his housing unit carrying a pair of socks that prison officials alleged contained a combination lock. [*Id.* at 3–4.] An investigation was conducted, and the matter was referred to the Unit Discipline Committee. [Doc. 18-5.] Because of the nature of the charges, the UDC referred the matter to a Disciplinary Hearing Officer ("DHO"). [*Id.*] After appearing before the DHO and receiving a disciplinary hearing, Petitioner was found guilty of the charge and received the following sanctions: (1) loss of 41 days of good conduct time; (2) 30 days of disciplinary segregation; (3) loss of commissary privileges for six months; (4) loss of visiting privileges for six months; and (5) loss of phone privileges for six months. [Doc. 22-7 at 4.]

Petitioner alleges he was denied a fair and impartial hearing because the DHO used unsupported facts to find Petitioner guilty—namely, that the DHO improperly relied on camera footage showing Petitioner walking toward the altercation with socks in his hand. [Doc. 1 at 4.] Petitioner asserts that this is improper because "though several eye witnesses were present on that day no one has ever stated they saw me do as I have been

charged with doing." [*Id*.] Petitioner does not deny that he was able to call witnesses at his disciplinary hearing or that he was represented by a staff representative. [*See* Doc. 22 at 3.] In short, Petitioner asserts that the video was not sufficient evidence of his guilt and that none of the witnesses saw him possess a weapon. [Doc. 1 at 4.] He requests that the Court view the video and determine if "in fact what they said I was doing on it was actually seen being done." [*Id.* at 4.] Petitioner seeks to have the incident report expunged from his record and have his good conduct time restored. [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Motion to Dismiss and Motion for Summary Judgment Standards**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). If on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

4

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

5

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

Because Respondent, in the motion to dismiss or for summary judgment, presented to the Court matters outside the pleadings, which the Court did not exclude, Respondent's motion to dismiss for failure to state a claim shall be treated as one for summary judgment.

**Habeas Corpus**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. *See United States v. Little*, 392 F.3d 671, 678–79 (4th Cir. 2004); *United States v. Miller*, 871 F.2d 488, 489–90 (4th Cir. 1989) (distinguishing between attacks on the "computation and execution of the sentence [and] the sentence itself"). A petition pursuant to § 2241 challenging the execution of a federal prisoner's sentence generally addresses "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997)). Thus, an analysis under § 2241 is the appropriate mechanism by which to review Petitioner's DHO hearing.

## DISCUSSION[2]

As stated, Petitioner contends he was denied due process at his disciplinary hearing because the hearing was not fair and impartial as the DHO relied on the video footage in determining Petitioner's guilt rather than on Petitioner's witnesses who testified they did not see Petitioner with a weapon. Respondent argues Petitioner was afforded all process he was due, including (1) notice of the charges more than 24 hours before the DHO hearing [Doc. 18-7]; (2) the opportunity to be present at the hearing where he was advised of his rights [Doc. 18-9 at 3]; (2) the opportunity to present evidence in the form of documents or witnesses, which Petitioner took advantage of by presenting three witnesses [*id.* at 2]; (3) the opportunity to have the assistance of a staff representative [*id.* at 1]; and (4) a written report of the DHO's decision, including a statement of the evidence he relied on and the reasons for the imposed sanctions. [Doc. 18 at 4–5.] The Court agrees with Respondent that Petitioner was afforded all process he was due.

---

[2] Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief" (internal quotation marks omitted)). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Any arguments not advanced at each step of the administrative appeal are procedurally defaulted. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002). Moreover, if a prisoner cannot obtain an administrative remedy because of his failure to timely appeal at the administrative level, then the prisoner has procedurally defaulted his § 2241 claim, *see Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996), *cited with approval in Watkins v. Compton*, 126 F. App'x 621, 622 (4th Cir. 2005); *Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994), unless the prisoner can demonstrate cause and prejudice for the failure, *Moscato*, 98 F.3d at 761. Here, Respondent acknowledges Petitioner exhausted the claims advanced in the Petition. [Doc. 18 at 3.]

### *Petitioner's Disciplinary Action*

According to the incident report, at approximately 12:39 p.m. on May 13, 2012, Petitioner was seen on video inserting a heavy object into a white tube sock during a physical altercation involving multiple inmates. [Doc. 18-5.] Petitioner was charged with Code 104—possession, manufacture, or introduction of a weapon, dangerous chemical, explosive or any ammunition. [*Id.*] The incident report was delivered to Petitioner on June 8, 2012, at 11:00 a.m. [*Id.*] Petitioner was advised of his rights in advance of the hearing by Counselor Larkin on June 12, 2012, [Doc. 18-9 at 1], and again by the DHO at the hearing [*id.* at 3].

The DHO conducted a hearing on June 27, 2012. [*Id.*] Petitioner was present. [*Id.*] Petitioner appeared with a staff representative, C. Hunton. [*Id.*] The staff representative stated in defense of Petitioner, "I reviewed the tape and it was hard to tell if he put anything in the sock or if there was anything already in there." [*Id.*] The DHO summarized Petitioner's statement at the hearing:

> [He] was out there for the spirit of the moment with two socks, barefoot watching the assault and then turned right back around. [He] never had a weapon. When asked when he went to see what was going on, Burgess stated, he went out when his cellmate said they were killing him. Burgess stated his cellmate was in the cell the entire time with him.

[*Id.*] Petitioner contends he was clipping his toenails when the fight broke out, which is why he was barefoot and had his socks in his hand when he left his cell. [Doc. 18-5 at 1.] Petitioner called three witnesses.[3] Two witnesses claimed they did not see Petitioner during the assault. [Doc. 18-9 at 2.] The third witness testified that Burgess was clipping

---

[3] Inmate Gentry was not called as a live witness due to security concerns, but he was called in front of the DHO and Petitioner's staff representative. [Doc. 18-9 at 2.]

his toenails when the fight broke out and that he did not see him place a lock in his sock. [*Id.* at 2.] The DHO determined that Petitioner's fourth witness, Jamal Beirut, would be repetitive and thus was not called. [*Id.*]

In reaching his decision, the DHO considered the following evidence: the witnesses' statements, the video footage of the incident, still photos of the incident captured on video, the inmate investigative report, memos from Officer Paintsil, Lt. Lavorato, Lt. Allred, medical documentation of inmate Gentry, and a written statement provided by Petitioner to his staff representative. [*Id*.] The DHO determined that Petitioner committed the act as charged. [*Id*.]

### *Analysis*

Certain procedural safeguards apply when loss of statutory good time credit is at issue. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In *Wolff*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

*Id.* at 563–76.  Additionally, DHO findings revoking a prisoner's good time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–56 (1985).  In *Hill*, the Supreme Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456.  The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the decision.  *Id.* at 455–56; *see also Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990) ("Nor does [requiring some evidentiary basis to revoke good time credits] imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.").  This standard requires "only that the decision not be arbitrary or without support in the record."  *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).  As the Court noted in *Hill*:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455–56.

A review of the record reveals the due process requirements stated in *Wolff* were observed in this case.  Petitioner was provided with written notice of the charges more than

24 hours before the hearing on the charges, and was provided a copy of the DHO report that included information about the evidence upon which the DHO relied on and the reasons for the disciplinary action.  Before the hearing, Petitioner was advised in writing of his right to call witnesses, to present documentary evidence, and to have a staff representative at the hearing; Petitioner signed the form to indicate he had been advised of his rights [Doc. 18-7].  At the DHO hearing, Petitioner appeared with his requested staff representative and was afforded the right to present three witnesses.

As to the fifth requirement stated in *Wolff*, Petitioner alleges he was denied a fair and impartial hearing because the DHO improperly relied on the video footage, rather than Petitioner's witnesses.  Petitioner's conclusory allegations alone are insufficient to preclude granting summary judgment to Respondent.  *See Ross*, 759 F.2d at 365.  First, the DHO is entitled to make credibility determinations.  Second, Petitioner has failed to provide any evidence that the DHO was not impartial.  Rather, the record establishes the DHO conducted a hearing and examined the record, including the evidence put forth by Petitioner in the form of Petitioner's written statement and Petitioner's three witnesses.  Accordingly, Petitioner was afforded all due process required under *Wolff*.

As previously stated, judicial review of prison disciplinary actions is limited solely to a determination of whether there is *some evidence* in the record to support the DHO's decision.  *See Hill*, 472 U.S. at 454–56.  Here, there is some evidence in the record to support the DHO's decision that Petitioner committed the offense of possession of a dangerous weapon: Petitioner admits that he was out of his cell carrying his socks, Petitioner was seen on video carrying these socks, and two white athletic socks—one containing a combination lock—were discovered in a trash can located in Petitioner's unit.

Further, the DHO examined Petitioner and made a credibility determination that Petitioner was "less than truthful" in his account of the incident. [Doc. 18-9 at 3.] Therefore, the Court finds that there was "some evidence" to support the DHO's finding and sanctions. In conclusion, Petitioner was afforded the due process required under *Wolff*, and some evidence supports the DHO's decision; accordingly, Respondent's motion for summary judgment should be granted, and the Petition should be denied.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion to dismiss or, alternatively, for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

Jacquelyn D Austin
United States Magistrate Judge

September 11, 2013
Greenville, South Carolina

12